UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

CIRCUITRONIX, LLC,
a Florida limited liability company,

 Plaintiff,

                 **JURY DEMAND**

v.

SUNNY KAPOOR,
an individual,

 Defendant.
_____/

# COMPLAINT

 Plaintiff, Circuitronix, LLC ("Circuitronix," or "Plaintiff") files this action against Sunny Kapoor ("Kapoor," or "Defendant"), and alleges:

### PRELIMINARY STATEMENT

 1. This is an action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and duty of loyalty, misappropriation of trade secrets under the Florida Uniform Trade Secrets Act, § 688.001, Fla. Stat., *et seq.*, and tortious interference with an advantageous business relationship.

 2. Circuitronix is a business that specializes in the manufacturing and distribution of printed circuit boards for a variety of applications, including automotive, industrial, lighting, and security systems. Circuitronix utilizes state-of-the-art facilities in the People's Republic of China (hereinafter the "Mainland Chinese manufacturers").

 3. Kapoor was an employee of Circuitronix. He was terminated on March 15, 2015. At Circuitronix, Kapoor was the Assistant Chief Executive Officer, whose duties included

responsibility for all operations of the company, such as finance, sales, vendor management, human resources, and administration and systems. He operated out of Circuitronix's Hong Kong office. Kapoor was tasked with, among other things, interacting with, and procuring exclusive contracts with, Mainland Chinese manufacturers. Due to the sensitive and proprietary nature of Circuitronix's dealings with the Mainland Chinese manufacturers, Kapoor's employment agreements with Circuitronix set forth a number of covenants (the "Primary Restrictive Covenants") and exclusivity requirements.

4.     The Primary Restrictive Covenants and exclusivity requirements restrict Kapoor's ability to disclose confidential, proprietary information as well as to compete with Circuitronix, among other restrictions.  Kapoor breached the Primary Restrictive Covenants and exclusivity requirements by engaging in self-dealing. As a result, Circuitronix is entitled to damages from Kapoor.

## JURISDICTION AND VENUE

5.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The parties are a citizen of a State and a citizen of a foreign state. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a Florida citizen; it is a Florida limited liability company principally located in Fort Lauderdale, Florida. Defendant is a citizen of a foreign state, the Republic of India.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2)-(3). A substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida. In addition, Defendant irrevocably submitted to venue in the Southern District of Florida for proceedings arising out of his employment agreements. Defendant's U.S. employment agreement ("Primary Agreement") states that Defendant irrevocably submits to "the

2

nonexclusive jurisdiction of the courts of the State of Florida and the United States District Court in the [sic] Broward County, Florida; and waives any objection which [Defendant] may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have jurisdiction over [Defendant]." Primary Agreement at ¶ 19(B). A second employment agreement (the "Letter Agreement"), which supplements the Primary Agreement, contains a similar provision. *See* Letter Agreement at p. 4, ¶ 14.

7. All conditions precedent to bringing this action have occurred or have been waived.

**FACTS**

8. Circuitronix is a business that specializes in the manufacturing and distribution of printed circuit boards for a variety of applications, including automotive, industrial, lighting, and security systems.

9. Circuitronix uses Mainland Chinese manufacturers in the ordinary course of this business.

10. Mainland Chinese manufacturers enter into exclusivity agreements with Circuitronix in order to protect Circuitronix's confidential information regarding its customers, their strategies, and their manufacturing specifications. Before a Mainland Chinese manufacturer engages in a transaction with Circuitronix, it is customary to sign a manufacturer's agreement that provides covenants not to compete, among other protections.

11. In order to facilitate its operations in the People's Republic of China, Circuitronix relocated Kapoor to help run its operations from its base in Hong Kong.

12. Kapoor entered into three agreements (collectively the "Employment Agreements") with Circuitronix before initiating work out of the Hong Kong office. The U.S. employment agreement — or Primary Agreement, a true and correct copy of which is attached as Exhibit "A"; a Hong Kong employment agreement (the "Secondary Agreement"); and the Letter Agreement, which supplements and resolves any conflicts between the Primary and Secondary Agreements, a true and correct copy of which is attached as Exhibit "B."

## Primary Agreement

13. The Letter Agreement reiterates that the Primary Restrictive Covenants set out in the Primary Agreement will take effect even during the period of the Secondary Agreement. *See* Exhibit "B" at p. 2. Those Primary Restrictive Covenants are: (a) Covenant Not to Disclose Confidential Information; (b) Covenant Not to Compete; (c) Covenant Not to Solicit Customers and Employees; (d) Covenant to Return Confidential Information; and (e) Covenant Not to Conduct Business Outside the Authorized Territory. *See* Exhibit "A" at ¶ 8.

14. The <u>Covenant Not to Disclose Confidential Information</u> defines confidential information as

> any information of any kind, nature, or description concerning any matters affecting or relating to the business of the Employer, including without limiting the generality of the foregoing, the name and contact information of the Employer's customers, the prices the Employer obtains or has obtained from its customers, the Employer's advertising and marketing plans, […] information about the Employer's business model and manner of operation, information contained in the Employer's personnel files, all financial information concerning the Employer, all information developed or acquired by the Employer relating to prospective or current business transactions and arrangements, the business agreements and understandings between the Employer and any of its affiliates, vendors or customers, the information related to the analysis of potential markets into which the Employer may expand, and all other non-public information that an Employee learns which relates to the Employer, its affiliates, vendors or customers.

*Id.* at ¶ 8(A)(i).

15. The covenant indicates that Kapoor "shall not divulge, disclose, or communicate to any person, firm, or corporation at any time, in any fashion, form or manner, either directly or indirectly, any Confidential Information, unless said disclosure is made in the ordinary course of the Employer's business, and the disclosure is reasonably intended to further the Employer's business interests." *Id.* at ¶ 8(A)(ii).

16. Moreover, the Covenant Not to Disclose Confidential Information provides an "Employee's Acknowledgement" that Circuitronix's business contains confidential information, and that Kapoor has a duty to maintain the Confidential Information in a confidential manner "in perpetuity." *Id*. at ¶ 8(A)(iii).

17. The Covenant Not to Compete provides that Kapoor, during and for three (3) years after termination of employment, "shall not (individually or as an officer, director, partner, joint venture [sic], shareholder, agent, or independent contractor) compete with the Employer anywhere in the Globe." *Id.* at ¶ 8(B). The covenant also provides that the scope is reasonable considering that Circuitronix does business around the world. *See id.*

18. The Covenant Not To Solicit Customers and Employees provides that Kapoor, during and for five (5) years after termination of employment, "shall not (individually or as an officer, director, partner, joint venture [sic], shareholder, agent, or independent contractor) solicit, recruit, hire, or attempt to solicit, recruit or hire, directly or by assisting another to do so, a shareholder, officer, employee or agent of: (a) the Employer, (b) Employer's affiliates, or (c) Employer or its affiliates' vendors or customers." *Id.* at ¶ 8(C).

19. The Primary Agreement also includes a provision on Kapoor's duty of loyalty to Circuitronix. The agreement states that

> During working hours, Employee shall devote all of his attention, knowledge, and skills to Employer's business interests and shall do so in good faith by using his

best efforts. Employee acknowledges that Employer is reposing a significant amount of trust in Employee and that Employer will be relying on Employee for information and guidance.

*Id.* at ¶ 3

20. Additionally, due to the difficulty in quantifying the damages accrued due to breach of these covenants, and others Primary Restrictive Covenants, the Primary Agreement provides a "High-Low Agreement," which provides liquidated damages in a range of $250,000.00 to $10,000,000.00. *See id.* at ¶ 16.

21. The Primary Agreement also provides for the prevailing party's attorneys' fees and costs to be paid, including pre-litigation investigations and negotiations. *See id.* at ¶ 14.

### Letter Agreement

22. The Letter Agreement provides, in addition the above covenants and provisions, for a "Termination Fee" contingent upon a "Termination Event." *See* Exhibit "B" at p. 4, ¶ 13.

23. A Termination Event is defined in this paragraph to mean termination due to "breach or alleged breach of any of the provisions of the Primary Agreement, Secondary Agreement and/or this Agreement." *See id.*

24. Certain provisions of those agreements need to be breached three times to trigger a Termination Event; however, breach of non-compete, non-solicitation, or non-disclosure provisions qualify as a Termination Event upon the first and/or only breach. *See id.*

25. Upon a Termination Event, if Kapoor was paid over $20,833.33 per month for any of the twelve months preceding the Termination Event — known as the "Look-Back Period" — Circuitronix would be entitled to a Termination Fee "equal to the aggregate of the Excess Amount per month during the twelve-month Look-Back Period. *See id.*

26. The Termination Fee may be in addition to any other damages recoverable under the agreements. *See id.*

27. The Letter Agreement also provides that the employee will have exclusive employment with Circuitronix. *See id.* at p. 2, ¶ 1.

28. The Letter Agreement further provides that service of process may be made by overnight courier, registered or certified mail to Kapoor's address, and that Kapoor agreed not to object to service of process on the grounds that it is made by such delivery. *See id.* at pp. 5–6, ¶¶ 14, 20.

### Kapoor Breaches the Agreements

29. Kapoor was sent to Hong Kong in July 2013 to help run operations as Assistant Chief Executive Officer.

30. While in Hong Kong, Kapoor violated the terms of his employment with Circuitronix on multiple occasions, damaging Circuitronix. He engaged in self-dealing and breached numerous employment policies.

### Improper Dealings with Topsearch

31. In 2014, Kapoor established a relationship with a Mainland Chinese manufacturer named Topsearch Printed Circuits, Limited ("Topsearch").

32. Circuitronix required an exclusivity agreement with Topsearch in order to protect Circuitronix's confidential information regarding its customers. This confidential, proprietary information includes their strategies, manufacturing specifications, pricing matrices, and other related parameters. Without an exclusivity agreement, Topsearch would be able to circumvent Circuitronix once in possession of its confidential information regarding its customers.

33. Starting in May 2014, Kapoor on several occasions misrepresented to Circuitronix that Topsearch had signed the exclusivity agreement. Circuitronix asked for a signed copy, which it did not receive from Kapoor.

34. In December 2014, Circuitronix again wrote to Kapoor asking for a signed copy of the agreement. Again, Kapoor misrepresented to Circuitronix that the agreement with Topsearch was signed.

35. During this time, as per the manufacturer's agreement that Kapoor indicated had been signed between Circuitronix and Topsearch, Kapoor requested that Topsearch add a number of customers to the agreement.

36. Topsearch accepted this request and added customers to the purported agreement.

37. In January 2015, Chief Executive Officer of Circuitronix, Rishi Kukreja ("Kukreja"), requested to meet the senior management of Topsearch. Topsearch indicated that it could only meet in the next fiscal quarter. Among the matters that Topsearch indicated to Kukreja that could be discussed included the execution of an agreement between Circuitronix and Topsearch — the agreement that Kapoor told Circuitronix was already signed.

38. In February 2015, Kapoor travelled to Florida with a copy of the exclusivity agreement between Circuitronix and Topsearch; however, the agreement was modified without authorization and was signed in 2015, not 2014. Notably, the signed agreement listed only one of Circuitronix's customers. Topsearch maintains that the unauthorized changes to the agreement were implemented after conversations with Kapoor.

39. Topsearch is now conducting business with other customers who would have been included in the original exclusivity agreement.

40. Kapoor introduced Topsearch to Circuitronix's customers in violation of the Primary Restrictive Covenant in the Primary Agreement and exclusive employment requirement in the Letter Agreement.

41. Kapoor is now competing, or preparing to compete, with Circuitronix through Topsearch and other manufacturers.

42. Kapoor has solicited other Circuitronix employees to similarly engage in such circumvention.

43. In February 2015, Circuitronix and Kapoor came to a mutual agreement that Kapoor would phase out of his employment at Circuitronix. Notably, per mutual assent the parties agreed that Circuitronix's failure to provide six months' notice under ¶ 7 of the Primary Agreement would not trigger severance to be paid pursuant to that provision and ¶ 5 of the Letter Agreement.

44. In March 2015, Circuitronix wrote Kapoor indicating that his U.S. termination would be effective March 15, 2015.

## Violations of Circuitronix's Employment Policies

45. In addition to breaches of the Primary Restrictive Covenants and employment exclusivity requirements, on numerous occasions Kapoor demonstrated behavior in direct contravention with his duties as Assistant Chief Executive Officer.

46. For instance, Kapoor failed to appear in the office during prescribed hours and sign out of work during intermittent breaks.

47. Moreover, Kapoor failed to attend meetings in a timely manner with Mainland Chinese manufacturers and misrepresented his whereabouts to Circuitronix.

48. Kapoor also misrepresented to Circuitronix that he had visited suppliers on certain occasions when he had, in fact, not scheduled or attended such meetings.

49. Kapoor charged personal expenses to his company credit card after being explicitly told not to do so. For instance, in May 2013, Kapoor charged HK $16,751 in personal expenses to his company card. Additionally, Kapoor's wife, Payal Bawa Kapoor, accompanied Kapoor on various business trips, during which her lodging and expenses were put on the Circuitronix company credit card.

50. Kapoor's tardiness and misuse of his company credit card amount to a Termination Event under p. 4, ¶ 13 of the Letter Agreement.

## Termination Fee

51. On April 28, 2015, counsel for Circuitronix wrote to Kapoor asking him to cease and desist breaches of the Primary Restrictive Covenants and exclusive employment requirement under the Letter Agreement. The letter also initiated a Termination Fee pursuant to ¶ 13 of the Letter Agreement. The parties mutually agreed that a Termination Fee was proper in the event of a breach of the nondisclosure and non-compete provisions in the Primary Agreement, as well as for repeated breaches of Circuitronix's employment practices. *See* Exhibit "B" at p. 4, ¶ 13. Based on the Termination Fee, Circuitronix demanded **$155,092.87**, which accounts for a Termination Fee of $267,791.51 less an amount owed to Kapoor of $112,698.64. The Termination Fee calculation claws back any salary over $20,833.33 per month for a period of twelve months preceding the Termination Event.

52. On June 26, 2015, counsel for Kapoor sent letters to Circuitronix demanding payment of the termination fee and threating claims of civil theft and retaliation if Circuitronix

did not pay Kapoor large additional sums of money. Kapoor's claims have no merit and are being used to extort Circuitronix and potentially impair its relations with customers.

## COUNT I

### Breach of Contract

Plaintiff incorporates and re-alleges paragraphs 1–52 herein as if set forth below.

53. Kapoor entered into three Employment Agreements with Circuitronix, including the Primary Agreement, which contains Primary Restrictive Covenants, and the Letter Agreement, which requires exclusivity in employment between Kapoor and Circuitronix.

54. The Primary Restrictive Covenants prohibit Kapoor from disclosing confidential information or competing with Circuitronix, among other things.

55. Kapoor breached the Primary Agreement and Letter Agreement by sharing Circuitronix's confidential information that he had received as an employee of Circuitronix with Topsearch, as well as through solicitation of Circuitronix employees.

56. Kapoor caused Circuitronix harm with this breach because it deprived Circuitronix the opportunity to transact with its customers, with whom Topsearch now, upon information and belief, transacts freely.

57. Circuitronix would have received substantial profits if Kapoor did not breach the Primary Restrictive Covenants in the Primary Agreement and the exclusivity requirement of the Letter Agreement.

58. Circuitronix has suffered substantial damages, including, but not limited to lost profits and revenues.

59. Due to the difficulty in quantifying damages associated with breach of contract, the Primary Agreement sets forth a liquidated damages provision — the "High-Low Agreement"

— which provides for no less than $250,000.00 and no more than $10,000,000.00. *See* Exhibit "A" at ¶ 16.

60.     The Primary Agreement also provides for prevailing party attorneys' fees.

61.     The Letter Agreement also provides for a Termination Fee due to breach of one of the Primary Restrictive Covenants and for failure to comply with Circuitronix's terms of employment, which Circuitronix has calculated to be $267.791.51. Because Circuitronix owes Kapoor an amount of $112,698.64, the Termination Fee is re-calculated to $155,092.87. The Termination Fee calculation claws back any salary over $20,833.33 per month for a period of twelve months preceding the Termination Event.

WHEREFORE, Circuitronix seeks compensatory damages, liquidated damages, and a Termination Fee resulting from Kapoor's breach of contract; pre-judgment and post-judgment interest; and any further relief deemed appropriate by this Court, including an award of attorneys' fees and costs incurred in bringing this action.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff incorporates and re-alleges paragraphs 1–52 herein as if set forth below.

62.     A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance. Common law calls for substantial compliance with the spirt, not just the letter, of a contract in its performance.

63.     Circuitronix and Kapoor entered into Employment Agreements with restrictive covenants, which provided that Kapoor would hold proprietary, confidential information given by Circuitronix in confidence and would not compete with Circuitronix.

64. After Kapoor entered into the Employment Agreements, he began to work with Circuitronix, during which time he learned of Circuitronix's confidential and proprietary information.

65. Kapoor owes Circuitronix a duty to refrain from arbitrary and unreasonable conduct.

66. Kapoor materially breached the implied covenant of good faith and fair dealing by, upon information and belief, (1) disclosing confidential information to Topsearch, which then circumvented Circuitronix to work with its customers; and (2) failing to disclose to Circuitronix that he had failed to procure the exclusivity agreement; (3) soliciting Circuitronix employees to circumvent the company; and (3) otherwise acting unreasonably and in bad faith.

67. Circuitronix has been damaged as a result of Kapoor's breach of the implied covenant of good faith and fair dealing. Circuitronix was damaged by Kapoor's interferences because he caused Topsearch to circumvent Circuitronix.

68. This circumvention has caused various customers to do business directly with Topsearch, depriving Circuitronix of profits and revenues it would have otherwise received.

69. Circuitronix has suffered substantial damages, including, but not limited to, lost profits and revenues.

WHEREFORE, Circuitronix seeks compensatory damages, liquidated damages, and a Termination Fee resulting from Kapoor's breach of contract; pre-judgment and post-judgment interest; and any further relief deemed appropriate by this Court, including an award of attorneys' fees in bringing this action, and if necessary injunctive relief to enjoin retaliatory conduct if any.

## COUNT III

## Breach of Fiduciary Duty and Duty of Loyalty

Plaintiff incorporates and re-alleges paragraphs 1–52 herein as if set forth below.

70. The Primary Agreement between Kapoor and Circuitronix provides that Kapoor owes a duty of loyalty to the company. Specifically, Kapoor is required to devote his time during work hours to Circuitronix's "business interests and shall do so in good faith by using his best efforts." Exhibit "A" at ¶ 3.

71. The Primary Agreement creates this fiduciary relationship because of the large amount of trust Circuitronix has put in Kapoor to manage operations in Hong Kong. *See id.*

72. As an employee of Circuitronix, Kapoor owed a fiduciary duty and duty of undivided loyalty to Circuitronix, regardless of the terms of the agreements.

73. Kapoor violated his fiduciary duties and duty of loyalty to Circuitronix by not acting in Circuitronix's best interests when he, upon information and belief, disclosed confidential information to third parties and solicited other employees to similarly engage in such activities.

74. Such actions were undertaken by Kapoor in bad faith for his own benefit and not intended to benefit Circuitronix.

75. As a direct result of Kapoor's actions, Circuitronix has suffered injury in the form of lost profits and revenues from the inability to transact with its customers through Topsearch.

WHEREFORE, Circuitronix seeks compensatory damages for Kapoor's breach of his fiduciary obligations, including the duty of loyalty, and disclosure of confidential information; pre-judgment and post-judgment interest; and any further relief deemed appropriate by this Court, including an award of attorneys' fees in bringing this action.

## COUNT IV

### Misappropriation of Trade Secrets under § 688.001, Fla. Stat., *et seq.*

Plaintiff incorporates and re-alleges paragraphs 1–52 herein as if set forth below.

76. Florida's Uniform Trade Secrets Act, § 688.001, Fla. Stat., *et seq.*, ("FUTSA") allows a plaintiff to seek both damages and injunctive relief for misappropriation of trade secrets. Circuitronix here seeks both monetary damages and injunctive relief for Kapoor's misappropriation of the confidential information provided him by Circuitronix in the course of his employment.

77. Circuitronix possessed confidential information in the form of the requirements of its customers, pricing matrices, and other related parameters. This confidential information was a trade secret for the purposes of FUTSA because it derived independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from its disclosure or use.

78. Circuitronix took reasonable steps to protect the confidentiality of its proprietary information. It required Kapoor to sign the Primary Agreement, which contained a description of confidential information, and covenant against disclosure of such information, and an acknowledgement by Kapoor that such information constitutes a trade secret under FUTSA. *See* Exhibit "A" at ¶ 8(A)(i)-(iii).

79. Kapoor misappropriated the confidential information arising from his employment with Circuitronix by disclosing it to third parties, including Topsearch. All conduct was undertaken without disclosure to Circuitronix or its permission.

80. Kapoor knew or had reason to know that the confidential information had been improperly obtained because he had executed Employment Agreements prohibiting him from disclosing or using Circuitronix's confidential information.

81. Kapoor caused harm to Circuitronix by misappropriating the confidential information because Circuitronix was deprived of the opportunity to capitalize on transactions with its customers, which, but for Kapoor's misappropriation, would not have become available to third parties, such as Topsearch.

WHEREFORE, Circuitronix seeks damages for Kapoor's violations of FUTSA, including compensatory damages resulting from Kapoor's misappropriation of Circuitronix's confidential information, which in turn include Circuitronix's actual losses and the amounts by which Kapoor has been unjustly enriched by his misappropriation of Circuitronix's confidential information, pursuant to § 688.004(1), Fla. Stat.; exemplary damages in an amount not exceeding twice the damages described above, pursuant to § 688.004(2), Fla. Stat.; injunctive relief preventing Kapoor from making further disclosure or use of Circuitronix's confidential information pursuant to § 688.003(1), Fla. Stat.; attorneys' fees pursuant to § 688.005, Fla. Stat.; pre-judgment and post-judgment interest; and any further relief deemed appropriate by this Court.

## COUNT V

### Tortious Interference with an Advantageous Business Relationship

Plaintiff incorporates and re-alleges paragraphs 1–52 herein as if set forth below.

82. Circuitronix had a business relationship with its customers

83. Kapoor was aware of the fact that Circuitronix was engaged in business with these customers.

84.     Kapoor interfered with Circuitronix's business relationships with these customers by using the confidential information acquired during his employment with Circuitronix to allow Topsearch and potential other third parties to circumvent Circuitronix's relationship with these customers.

85.     Kapoor's interferences were intentional and unjustified, as they were undertaken with the intention of misappropriating Circuitronix's confidential information and depriving Circuitronix of the benefits of transacting business with the customers through an exclusive agreement with Topsearch as its manufacturer.

86.     Circuitronix was damaged by Kapoor's interferences because the loss of these relationships with customers through an exclusive agreement with Topsearch as manufacturer deprived Circuitronix of the opportunity to pursue and capitalize on transactions with the customers, and caused Circuitronix to lose any profits that would have arisen from an exclusive agreement with Topsearch to provide manufactured products to Circuitronix's customers.

WHEREFORE, Circuitronix seeks compensatory damages resulting from Kapoor's tortious interference with customers' business relationships with Circuitronix, including damages resulting from Circuitronix's lost opportunity to transact business with these customers; pre-judgment and post-judgment interest; and any further relief deemed appropriate by this Court.

Dated: July 13, 2015

Respectfully submitted,

**KOZYAK TROPIN & THROCKMORTON, LLP**
*Counsel for Plaintiff*
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, Florida 33134
Tel.:  (305) 372-1800
Fax:  (305) 372-3508

          By: /s/ <u>Thomas A. Tucker Ronzetti</u>
              Thomas A. Tucker Ronzetti, Esq.
              Florida Bar No. 965723
              tr@kttlaw.com
              James M. Slater, Esq.
              Florida Bar No. 111779
              jslater@kttlaw.com

363274