# circuitronix

20th of November, 2013

Mr. Sunny Kapoor
Apartment 9A Tower 10,
Larvotto, No. 8 Ap Lei Chau Praya Road,
Hong Kong.

Re: **Circuitronix, LLC and Circuitronix (Hong Kong), Limited Employment Covenants**

Dear Sunny:

This letter agreement (this "**Agreement**") amends, restates and supersedes in its entirety that certain letter agreement executed on the 30th of May, 2013 (the "**May Letter Agreement**") as follows:

   A. The Employment Agreement ("**Primary Agreement**") dated October 1, 2012 between Sunny Kapoor ("**you**" or "**Employee**") and Circuitronix, LLC, a limited liability company organized and existing under the laws of the State of Florida, whose principal place of business is located at 3131 SW 42nd Street, Fort Lauderdale, Florida 33312 (the "**CTX USA**" or "**Employer**"); and

   B. The Employment Agreement ("**Secondary Agreement**") dated May 30, 2013 by and between you and Circuitronix (Hong Kong), Limited, a limited company organized and existing under the laws of Hong Kong, whose principal place of business is located at Unit 16 7/F Block A, Po Lung Centre, 11 Wang Chiu Road, Kowloon (the "**CTX HKG**").

As you know, CTX USA conducts business worldwide and has developed valuable relationships with important and significant customers with global operations and with its manufacturers and representatives in the Peoples Republic of China, Mexico and Hong Kong, China. Because a significant part of CTX USA's business involves the manufacture of products in China, the CTX HKG presence is critical to CTX USA, both because of the ease of travel from Hong Kong to the various provinces in China where its manufacturers are located and because of Hong Kong's importance as a manufacturing agent center and as a financial center. In light of the importance of CTX HKG to CTX USA, you agreed with CTX USA to temporarily provide services to CTX HKG at its offices in Hong Kong so that you may effectively carry out your assigned duties for both CTX USA and for CTX HKG.

CTX USA designated you to carry on such duties because you are a valued and trusted employee and because you understand the critical importance of CTX USA's customer and manufacturer relationships. You understand that those relationships have taken years to develop. Because of its critical customer relations and the favorable terms it has negotiated with its manufacturers, CTX USA enjoys a profitable business. You understand that the loss of even one customer may have a material adverse effect on CTX USA. Because you also

S·K

Mr. Sunny Kapoor
20th of November, 2013
Page 2

understand the sensitive nature of such relationships and the adverse impact that the loss of a customer or of a manufacturing relationship may have on CTX USA, you agreed to the restrictive covenants in the Primary Agreement (including, <u>Section 8</u> (Restrictive Covenants) and <u>Section 9</u> (New Customers or Clientele Generated While at Work)), all of which provisions are incorporated and made a part of this Agreement as if fully set forth herein and which you hereby affirm and agree to continue to be bound by (collectively, the "**Primary Restrictive Covenants**").

In light of the foregoing and in consideration of the opportunity to perform services for CTX HKG and continued services for CTX USA, you affirm, covenant and agree that, irrespective of the possibility that under Hong Kong law CTX HKG may not be able to enforce restrictive covenants having the breadth and scope of the Primary Restrictive Covenants:

1. The terms and conditions of the Primary Agreement, including without limitation the Primary Restrictive Covenants, will be deemed to be continuous and, as such, will continue to apply and be in full force and effect during the period of the Secondary Agreement, except as modified with regard to "Place and Hours of Employment" and "Compensation" under the Secondary Agreement;

2. The Primary Restrictive Covenants will be effective for purposes of the Secondary Agreement on the date you commence performing duties for CTX HKG; and

3. In the event of any Proceeding (as defined below) against you in any applicable jurisdiction for having violated any of the Primary Restrictive Covenants, you will not raise as a defense to any such action: (a) the fact of your employment in Hong Kong and any defense you may have under Hong Kong law, (b) the possibility that the Primary Restrictive Covenants may not be enforceable on public policy grounds or any other grounds under Hong Kong law; and (c) any conflicts of laws issues.

Furthermore, you agree that:

1. Your employment will be exclusive to CTX USA and CTX HKG ("**Exclusive Employment**").

2. The compensation payable to you under the Primary Agreement shall be reduced dollar-for-dollar by the equivalent amount payable to you under the Secondary Agreement; provided, however, that all reasonable efforts shall be made to maintain a ratio between the compensation payable under the Primary Agreement and the Secondary Agreement of 1 : 5; provided further, however, that at no point shall the compensation payable under the Primary Agreement be less than USD$5,000 per month even if the payment of such amount would be inconsistent with the target ratio of 1: 5 ratio set forth above.

3. In the event of an alleged breach or violation by you of (i) the Primary Restrictive Covenants or (ii) the "Post Employment Restraint" provisions contained in Section 7 of the Secondary Agreement, the "noncompetition period" or "non-solicitation period, as

S K

Mr. Sunny Kapoor
20th of November, 2013
Page 3

applicable, shall be tolled until such alleged breach or violation has been resolved or adjudicated.

4. If the period of time, area, or scope of restriction specified in the Primary Agreement should be adjudged unreasonable in any Proceeding (as defined below), then the period of time, area, or scope shall be reduced so that the restrictions may be enforced as is adjudged to be reasonable.

5. Should CTX USA not provide six months' notice to you in accordance with Section 7 of the Primary Agreement with respect to the termination of your employment with CTX USA and/or CTX HKG, the agreed upon severance amount of USD$50,0000 payable pursuant to such Section 7 shall be paid to you over six equal monthly installments, which installments shall be split between CTX USA and CTX HKG in such proportion as CTX USA may determine after consulting with you (it being agreed that upon payment in full of such USD$50,000 severance amount you shall not be entitled to any other compensation or other sum of any kind whether pursuant to the Primary Agreement, Secondary Agreement, applicable law or otherwise).  For the avoidance of doubt, the payment of the USD$50,000 severance amount pursuant hereto shall be in lieu of and/or in satisfaction of any payment that could be payable to you pursuant to the Garden Leave Provision (as defined below), whether under the Primary Agreement or the Secondary Agreement.

6. The "Garden Leave" provision set forth in Section 6 of the Secondary Agreement (the "**Garden Leave Provision**") is incorporated herein by this reference as if fully set forth herein and you agree to be bound thereby to the fullest extent possible under applicable law.  You further agree that in the event you violate (i) the Primary Restrictive Covenants, (ii) the "Post Employment Restraint" provisions contained in Section 7 of the Secondary  Agreement or (iii) your Exclusive Employment, you shall have no rights under the Garden Leave provision and that CTX USA and/or CTX HKG shall have the right to terminate your agreement immediately upon notice, without any liability or further obligation under either the Primary Agreement, the Secondary Agreement or otherwise, except to pay for any compensation earned under the Primary Agreement and/or the Secondary Agreement through the effective date of such termination.

7. You will in good faith cooperate with CTX USA to assist it to maintain your H1-B visa status in good standing.

8. Before your H1-B visa status should expire or terminate for any reason, you shall immediately take all steps necessary to seek permanent residency status or other lawful work status in the United States.

9. You agree that you will not use the status of your H1-B visa or loss thereof as a defense or counterclaim in any Proceeding.

S.K

Mr. Sunny Kapoor
20th of November, 2013
Page 4

10. In the event that your H1-B visa status terminates for any reason, you hereby release CTX USA and CTX HKG from and against any and all claims that you may have or could bring relating to lost wages or other compensation and or damages under any theory.

11. The intent today is that Employee would return to the CTX USA office on 30th of June, 2015 and resume responsibilities as outlined in the Primary Agreement. The Employee will work out of CTX USA Corporate office. The Employee's compensation package will remain the same as outlined in Plan 2 of the Compensation Exhibit of the Primary Agreement. Nothing in this clause limits CTX USA's and CTX HK's rights and obligations based upon the Termination Clause of the Primary and Secondary Agreement

12. Except as expressly modified hereby, the Primary Agreement and the Secondary Agreement shall remain in full force and effect.

13. Notwithstanding anything to the contrary in the Primary Agreement, the Secondary Agreement or herein, if the total monthly compensation paid to you by CTX USA and/or CTX HKG during any of the twelve months ("**Look-Back Period**") immediately preceding a Termination Event (as defined below) exceeds USD$20,833.33 per month (the "**Excess Amount**"), you shall pay a termination fee equal to the aggregate of the Excess Amount per month during the Look-Back Period ("**Termination Fee**").    For example:   if a Termination Event occurs on January 1, 2014, the Look-Back Period would be January 1, 2013 through December 31, 2013.  If in June, September and November of such Look-Back Period the total monthly compensation paid to you is $30,000, 25,000 and 28,000, respectively, the Termination Fee payable would be the sum of  $9,166.67,  $4,166.67 and  $7,166.67 or  $20,500.01.  For  purposes  hereof, "**Termination Event**" means the termination of your employment with CTX USA and/or CTX HKG  because you voluntarily resign or your employment is terminated due to your breach or alleged breach of any of the provisions of the Primary Agreement, the Secondary Agreement and/or this Agreement. For the benefit of the Employee any breach of non-compete/non-solicitation/non-disclosure are qualifying factors of a Termination Event whereas other Terms and Conditions of Employment as existed on the 6th of June, 2013 ( or if modified and accepted by both parties) have to be breached three times to qualify as a   Termination Event. If the Employee is no more than one hour late three times in one calendar quarter and makes up the time at the end of the day it would not be considered a breach. Additionally for the purpose of this agreement a one half hour is provided a a grace period from the required start time.  For the purpose of this agreement performance with the exception of being a " no show" at the instructed place of work will not qualify as a Termination Event.    If a Termination Fee becomes due and payable hereunder, you agree that CTX USA and/or CTX HKG may deduct any compensation earned and due but not yet paid to you and apply such sum to fully or partially satisfy the Termination Fee due, as the case may be.  The Termination Fee is in addition to and not in limitation or in lieu of any damages and/or amounts due to or recoverable by CTX USA and/or CTX HKG, as the case may be, under the Primary Agreement, the Secondary Agreement and/or herein if the Termination Fee becomes due hereunder as a

ςΚ

Mr. Sunny Kapoor
20th of November, 2013
Page 5

result of your breach or alleged breach of any of the provisions of the Primary Agreement, the Secondary Agreement or this Agreement.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida or, at the option of Employer, the laws of any jurisdiction in which Employer commences any suit, action or proceedings relating to this Agreement ("**Proceedings**") (other than such jurisdiction's rules of conflicts of laws to the extent that the laws of another jurisdiction would be required thereby).  With respect to any Proceedings, Employee irrevocably: (a) submits to the nonexclusive jurisdiction of the courts of the State of Florida and the United States District Court located in the Broward County, Florida; and (b) waives any objection which it may have at any time to the laying of venue of any Proceedings brought in any such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have jurisdiction over Employee.  Nothing in this Agreement precludes Employer from bringing Proceedings in any other jurisdiction nor will the bringing of Proceedings in any one or more jurisdictions preclude the bringing of Proceedings in any other jurisdiction.  Employee agrees that service of process in any Proceeding may be made by overnight courier in the manner set forth in the Notice provision below (whether Employee is located in the United States or in Hong Kong) and agrees not to object to such service of process on the grounds that it was served upon Employee by such method.

15. This Agreement, the Primary Agreement and the Secondary Agreement represent the parties' full and complete understanding regarding their employment relationship.  All other prior agreements, covenants, representations or warranties, express or implied, oral or written, that refer or relate to the employment relationship have either been merged into this Agreement the Primary Agreement and/or the Secondary Agreement or have been intentionally omitted therefrom. This Agreement, the Primary Agreement and the Secondary Agreement supersede any and all prior agreements or understandings between Employer and Employee, including the May Letter Agreement.

16. Any modification to this Agreement shall only bind the parties if it is in writing and signed by the parties.

17. In the event that any of the terms, conditions or covenants of this Agreement are held to be unenforceable or invalid the validity and enforceability of the remaining provisions, or portions thereof, shall not be affected thereby and effect shall be given to the remaining provisions.

18. Employer's rights and obligations under this Agreement shall inure to the benefit of and bind Employer's successors and assigns.

19. Each party agrees to take all such other and further actions as may be necessary to carry out the intents and purposes of this Agreement.

Mr. Sunny Kapoor
20th of November, 2013
Page 6

20. All notices, demands, consents, approvals, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder (collectively, "**Notices**") shall be in writing and shall be given by personal delivery, or facsimile or reputable overnight courier service (charges prepaid) or United States registered or certified mail (postage prepaid, return receipt requested) addressed as hereinafter provided, provided, however, that any Notice given by facsimile shall also be given by personal delivery or United States registered or certified mail. Notice shall be deemed delivered on: (a) if by overnight express delivery or personal delivery, the date of receipt, or attempted delivery, if such communication is refused; (b) if sent by overnight courier service, one (1) business day after having been deposited for next day overnight delivery with any reputable overnight courier service; and (c) if sent by mail (as aforesaid), the date of receipt or attempted delivery, if such mailing is refused. Until further notice, notices and other communications under this Agreement shall be addressed to the parties listed below as follows:

If to Employee:                    Apartment 9A Tower 10,
                                              Larvotto, No. 8 Ap Lei Chau Praya Road,
                                              Hong Kong.

                                              Attn: Sunny Kapoor

If to the Company:              Circuitronix, LLC
                                              3131 SW 42nd Street
                                              Fort Lauderdale, Florida 33312
                                              Attn: Mr. Rishi Kukreja

Either party may designate another addressee (and/or change its address) for Notices hereunder by a Notice given pursuant to this Section. Employee agrees that Employee shall provide Notice of a change in Employee's mailing address within 10 days of a change thereof. Should Employee's address change and Employee has failed to give Employer Notice of such change, Employer shall be justified in relying upon the Employee's address on file for purposes of the giving of any Notice hereunder.

Please indicate your agreement with the foregoing by signing where indicated below and by returning the originally signed counterpart hereof to the undersigned.

                                              Sincerely,

                                              Rishi Kukreja

**AGREED TO AND ACCEPTED:**

_____
Sunny Kapoor