# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No.  15-cv-61446-BLOOM/Valle

CIRCUITRONIX, LLC,

      Plaintiff,
v.

SUNNY KAPOOR,

      Defendant.
_____/

SUNNY KAPOOR

      Counter-Plaintiff,
v.

RISHI KUKREJA and
CIRCUITRONIX, LLC,

      Third Party and Counter-Defendants.
_____/

## ORDERS ON CROSS MOTIONS TO ENFORCE SETTLEMENT AGREEMENT

**THIS CAUSE** is before the Court on a set of cross-motions: Defendant Sunny Kapoor's ("Kapoor" or "Defendant") Motion to Enforce Confidential Settlement Agreement and Permit Limited Discovery Regarding Potential Additional Breaches, ECF No. [50] ("Defendant's Motion"), and Plaintiff Circuitronix, LLC's ("Circuitronix" or "Plaintiff") Cross-Motion to Enforce Settlement Agreement, ECF Nos. [56] ("Plaintiff's Cross-Motion").  For the reasons set forth below, both motions will be granted in part and the parties will be allowed limited discovery for the purpose of resolving the motions.

## I. BACKGROUND

On July 13, 2015, Circuitronix, a business that, among other things, manufactures and distributes printed circuit boards for various industries, initiated the underlying suit against Kapoor, one of its former employees, asserting claims against Kapoor for the dissemination of Circuitronix's proprietary information, self-dealing and other breaches of his employment agreements and fiduciary duties.[1]  In response, Kapoor filed a counterclaim against Circuitronix and its Chief Executive Officer, Rishi Kukreja ("Kukreja"), asserting claims for breach of employment contract, unlawful retaliation, civil theft, and unpaid wages.  On December 1, 2015, the parties resolved all disputed claims in the underlying suit at mediation and signed a "mediation settlement term sheet" that same day.  Thereafter, on December 15, 2015, the parties entered into a long-form confidential settlement agreement ("Settlement Agreement") that set forth the terms of the parties' agreement to resolve the claims, which was filed under seal with the Court.  *See* ECF No. [53]. The Settlement Agreement was approved by the Court on December 17, 2015.  ECF No. [44].

On December 30, 2015, Circuitronix filed a Motion to Enforce Settlement Agreement, ECF No. [45], based on work Kapoor was engaging in with Bawa Machine and Tool Manufacturing ("BMT"), a company owned by Kapoor's father-in-law, Chand Bawa.  That motion was resolved when the parties filed a Joint Stipulation.  *See* ECF No. [48]. The Joint Stipulation provided, among other things, the following: "Pursuant to the Parties' Settlement Agreement, Kapoor shall not, directly or indirectly, engage in any line of Circuitronix's business, including within the scope of his work with [BMT]." *Id.*

---

[1] Kapoor served as the Assistant Chief Executive Officer of Circuitronix from October of 2012 until his employment was terminated in March of 2015.  In that capacity, Kapoor operated out of Circuitronix's Hong Kong office.  Kapoor's employment as Assistant CEO of Circuitronix was subject to a series of employment agreements.  *See* ECF Nos. [1-1]-[1-2].

Sometime in April or May of 2016, Circuitronix discovered a website operated by Imaginasian, Ltd. and Imaginasian Equipments Pvt. Ltd. (collectively, "Imaginasian"), companies owned by Kapoor's wife, Payal Bawa, and Chand Bawa, respectively, and for which Kapoor was actively working. In Circuitronix's view, the Imaginasian website demonstrated that Imaginasian was conducting business in direct competition with Circuitronix through BMT and Koala Holdings, LLC ("Koala"), a company owned by Kapoor's brother-in-law, Rohit Bawa, by selling or supplying a number of products in Circuitronix's line of business. Upon this discovery, Circuitronix sent identical letters dated August 1, 2016 to Chand Bawa at BMT and Rohit Bawa at Koala notifying each of them of the existence of the Settlement Agreement as well as Kapoor's obligation pursuant to the Settlement Agreement not to compete with Circuitronix. The instant motions followed, and the Court held an evidentiary hearing on December 8, 2016.

## II. ANALYSIS

### A. Defendant's Motion

Kapoor contends that the two letters sent by Circuitronix to Chand Bawa and Rohit Bawa, ECF Nos. [50-1]-[50-2], violated confidentiality and non-disparagement clauses found in paragraphs 13, 14 and 21 of the Settlement Agreement. With respect to the confidentiality clauses, Kapoor argues that the letters improperly informed third parties of the existence of the Settlement Agreement and certain restrictive covenants applicable to Kapoor thereunder. With respect to the disparagement clauses, Kapoor argues that the letters were sent for the sole purpose of disparaging Kapoor and intimidating the recipients into disassociating with Kapoor. Neither argument is well-taken.

To begin with, the confidentiality clause of the Settlement Agreement, provided at paragraph 21, deems "[a]ll information contained in and provided pursuant to" the Settlement Agreement as confidential information and mandates that the parties "take reasonable steps to ensure that such confidential information is not disclosed or disseminated to third parties or the public." ECF No. [53] at ¶ 21.  Importantly, the Settlement Agreement does not go as far as to deem its very existence confidential.  *Cf. Gulliver Schools, Inc. v. Snay*, 137 So. 3d 1045, 1046 (Fla. 3d DCA 2014) (finding dispositive an agreement's provision that "*the existence* or terms" of the agreement were not to be disclosed) (emphasis in original).  Accordingly, that the letters alert the recipients to the existence of the Settlement Agreement is not enough to render them in violation of the Settlement Agreement.

That said, the letters do notify the recipients of one of the restrictive covenants contained within the Settlement Agreement – namely, that Kapoor "shall not, directly or indirectly, engage in any line of Circuitronix's business" – which, as a specific term, undoubtedly falls within the ambit of paragraph 21.[2]  *See* ECF Nos. [50-1]-[50-2].  However, the Joint Stipulation entered into by the parties after Circuitronix's first motion for settlement enforcement on December 30, 2015, which is not under seal and which the letters specifically refer to in identifying the above-mentioned restrictive covenant, made accessible this otherwise confidential information.  *See* ECF No. [48].  Similarly, a number of the parties' unsealed filings – both prior to and contemporaneous with the instant competing motions – also disclose certain contents of the Settlement Agreement, and they do so in more specific detail than that found in the letters.  *See,*

---

[2] To the extent that the letters identify other restrictive covenants, they do not purport to identify the Settlement Agreement as the source of such restrictive covenants.  *See* ECF Nos. [50-1]-[50-2] ("Circuitronix . . . hereby notifies you that *Circuitronix employees are bound by agreements* that contain certain restrictive covenants, including non-disclosure, non-solicitation and non-compete provisions (collectively, the "Restrictive Covenants"). Mr. Kapoor is also bound by a Joint Stipulation . . . .") (emphasis added).

4

*e.g.*, ECF No. [40] at 2 (the parties' agreed motion to file Settlement Agreement under seal indicating that "[t]he settlement agreement provides for money to be given to Kapoor in exchange for Kapoor being bound by the Restrictive Covenants in his employment agreement with Circuitronix"); ECF No. [47] at 3 (Kapoor's response to Circuitronix's first motion for settlement enforcement providing that "[t]he Settlement Agreement also contains a non-compete provision which pertains to all 'lines of business' in which Circuitronix has engaged); ECF No. [50] at 2 (Defendant's Motion providing that "Paragraphs 13, 14, and 21 of this confidential settlement agreement contained confidentiality and non-disparagement clauses that specifically prohibited the dissemination of any information contained within the agreement or its subject matter").

That these disclosures make accessible much of what the Settlement Agreement seeks to keep confidential is not insignificant, especially considering that the Settlement Agreement itself allows for "disclosure to third-parties any information about the underlying facts that is reasonably necessary for the operation of Plaintiff's business." ECF No. [53] at ¶ 12; *see WellCare Health Plans, Inc. v. Preitauer*, 2012 WL 1987877, at *4 (M.D. Fla. May 23, 2012), *report and recommendation adopted*, 2012 WL 1987692 (M.D. Fla. June 4, 2012) ("The agreement clearly forbids making confidential information accessible; however, WellCare itself made this information accessible when it placed its bid in response to the Hawaii RFP. Thus, this information cannot be confidential."). The letters at issue were sent to third parties whom Circuitronix believed in good faith to be affiliated with Kapoor and engaging in business that competed with its line of business, and the letters disclosed no more information than that which had already been made accessible by the parties themselves. Thus, although the Court does not take the position that the Joint Stipulation and the above-mentioned filings waived

confidentiality, the Court does find that under the circumstances presented, the letters comport with the parameters outlined under paragraph 12 of the Settlement Agreement. To conclude otherwise would render that provision ineffectual.

Finally, the Court does not find that the letters violate the non-disparagement clause of the Settlement Agreement found at paragraph 13, which prohibits the parties from taking any "action which is intended, or would reasonably be expected, to harm each other's reputations or which would reasonably be expected to lead to unwanted or unfavorable publicity."[3] ECF No. [53] at ¶ 13. As discussed, the letters disclose the existence of the Settlement Agreement and one of Kapoor's obligations thereunder. The only other relevant information provided is a summary of what Circuitronix viewed as encompassing the scope of its line of business. Considered in their entirety, the letters and the communications made therein cannot be considered disparaging in nature or otherwise harmful to Kapoor's reputation or likely to bring him negative publicity. *See E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1353 (S.D. Fla. 2015) ("The operative term here is 'disparage.' Disparage means 'to discredit or bring reproach upon by comparing with something inferior.' *Webster's Third New International Dictionary (unabridged)* 653 (1981); *see also Black's Law Dictionary* 483 (7th ed.1999) (defining disparage as 'to dishonor (something or someone) by comparison' or 'to unjustly discredit or detract from the reputation of (another's property, product, or business)'")) (citation and alterations omitted).

Nevertheless, the parties have indicated that Circuitronix has sent out other letters to third parties regarding Kapoor, which have yet to be produced. *See e.g.*, ECF No. [60-1] at Exh. A, ¶ 8. Accordingly, although Defendant's Motion is denied to the extent that it seeks relief

---

[3] The letters do not implicate the non-disparagement clause found at paragraph 14, which refers exclusively to "press release[s]" and "public statements." ECF No. [53] at ¶ 14.

based on the two letters Circuitronix sent to Chand Bawa and Rohit Bawa, Kapoor will be allowed limited discovery to determine whether other third party communications sent by Circuitronix violated the confidentiality and non-disparagement clauses of the Settlement Agreement.

### B. Plaintiff's Cross-Motion

Central to Circuitronix's claim are a series of restrictive covenants found at paragraphs 3-5 of the Settlement Agreement. The most pertinent of those restrictive covenants at this stage of proceedings is the one found at paragraph 3, which provides in relevant part as follows: "Defendant shall not (individually, or as an officer, director, partner, shareholder, agent or affiliate) compete with Circuitronix, anywhere in the world, for a period of 3 years . . . . [T]his restriction applies to all *lines of business* in which Circuitronix engaged during the time period Defendant was employed by Circuitronix."[4] ECF No. [53] at ¶ 3 (emphasis added). Circuitronix contends that Kapoor is materially breaching the Settlement Agreement by directly competing with Circuitronix through related companies owned and operated by his family members – namely, Imaginasian, BMT, and Koala. Specifically, Circuitronix asserts that Imaginasian, "through BMT and Koala," is selling or supplying a host of products in Circuitronix's line of business, such as printed circuit boards and a variety of mechanical or metal parts that include "stamped, CNC machined, die casted, and tool and die parts." ECF No. [63] at 2. In opposition, Kapoor argues that Circuitronix has "grossly expand[ed], without any evidence in support, its 'line of business' in order to claim Mr. Kapoor is competing with [the] same." *Id.* at 4. Furthermore, according to Kapoor, "the products with which [he] conducts business . . . do not

---

[4] Pursuant to paragraphs 4-5 of the Settlement Agreement, Kapoor shall not "solicit, recruit, or attempt to hire any employee, officer, director, shareholder or agent of Circuitronix or any of its vendors, customers or affiliates[,]" or "have any contact that he initiates and/or was planned, with any suppliers, customers or employees of Circuitronix . . . ." ECF No. [53] at ¶¶ 4-5.

7

compete with Circuitronix but rather . . . incorporate the products manufactured by Circuitronix." *Id.*

### 1. Circuitronix's Line of Business

Critically, what constitutes Circuitronix's "line of business", as that term is contemplated in the Settlement Agreement, forms the underpinning of the specific claim asserted by Plaintiff. As such, ascertaining the precise meaning of that term is necessary in order to determine the merits of Plaintiff's Cross-Motion and Defendant's defenses. At the evidentiary hearing, and as has been the case since Circuitronix's first motion for settlement enforcement on December 30, 2015, the parties were unable to reach a consensus as to Circuitronix's line of business. Indeed, in characterizing the Settlement Agreement as a whole as "imperfect," the parties conceded that the term is vague and ambiguous. As such, much of the evidentiary hearing was spent in an effort to ascertain how the parties intended the Circuitronix's "line of business" term to be interpreted under the Settlement Agreement. *See generally Solymar Investments, Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 991 (11th Cir. 2012) ("In Florida, it is a fundamental tenet of contract law that a phrase in a contract is 'ambiguous' only when it is of uncertain meaning, and may be fairly understood in more ways than one. In the event of such an ambiguity, a trial court is authorized to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted.") (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995)) (internal citation, alterations, and quotation marks omitted).

A brief overview of how Circuitronix's line of business has been previously described up to this point is helpful. Turning first to the inception of the underlying suit, Circuitronix's Complaint filed on July 13, 2015 provides that "Circuitronix is a business that specializes in the

manufacturing and distribution of printed circuit boards for a variety of applications, including automotive, industrial, lighting, and security systems."[5] ECF No. [1] at ¶ 2.  Approximately four months later, on November 24, 2015, Circuitronix offered a more expansive (but not necessarily comprehensive) description of its line of business in its Answer and Affirmative Defenses to Kapoor's Counterclaim:

> Circuitronix is a business that specializes in, amongst other things, *including but not limited to* plastic injection molded parts and tooling, precision sheet metal extrusion, stamping and machine parts, silicone rubber keypads, membrane switches, printed circuit board assemblies in the manufacturing and distribution of flexible, rigid-flex and rigid printed circuit boards, for a variety of applications, including automotive, industrial, lighting, and security systems.

ECF No. [33] at ¶ 5 (emphasis added).  Thereafter, on December 15, 2015, the parties entered into the Settlement Agreement, which offered no definition for Circuitronix's "line of business" despite essential nature of that term.  *See* ECF No. [53].

The inclusion of certain metal parts within Circuitronix's line of business – a main point of contention here – was first expressed approximately two weeks later by Kukreja in support of Circuitronix's first motion for settlement enforcement.[6]  *See* ECF No. [45-1].  In response to that motion, Kapoor challenged what he perceived as Circuitronix's attempt to exclude him from the metals industry entirely.  *See* ECF No. [47] at 2 ("Plaintiff seeks to preclude Mr. Kapoor from participating in the *metals industry*—entirely . . . .") (emphasis in original); *id.* at 4 ("Mr. Kukreja states in conclusory fashion [that] Circuitronix is a global business that engages in . . . the *metals business*[] [and] [t]herefore . . . further avers [that] Mr. Kapoor's continuing operation in the metals business violates the provisions of the restrictive covenants . . . .") (internal

---

[5] The parties are in agreement that Circuitronix's line of business during the relevant time period included the manufacturing and distribution of printed circuit boards.

[6] Those metal parts include: stamped sheet metal parts; CNC sheet metal parts; die casting (aluminum, magnesium, iron, and steel); extrusions; heatsinks; tool and die manufacturing for plastic injection molded parts, printed circuit boards, die-cased parts, stamped parts, and extrusions; and cabinet locks.

quotation marks and citations omitted) (emphasis in original); *id.* at 7 ("[T]he obvious disconnect in [Plaintiff's] argument [is] that simply selling a handful of metal parts somehow entitles it to claim the *entire metals industry* as a line of business.") (emphasis added). Kapoor did not, however, explicitly take issue with the specific metal parts identified by Kukreja; to the contrary, his response suggested a recognition that Circuitronix had indeed done business with the identified metal parts. *See id.* at 2 ("Plaintiff seeks to preclude Mr. Kapoor from participating in the *metals industry*—entirely—simply because at some point Plaintiff offered a few *metal parts* for sale.") (emphasis in original); *id.* at 8 ("At best, and assuming Plaintiff were *still involved* in the sale of the enumerated metal parts, Plaintiff could preclude Mr. Kapoor from having any involvement with said enumerated metal parts. . . . Plaintiff has offered no evidence that it *ever expanded* its 'metal business' beyond the sale of the enumerated metal parts. In fact, . . . there is no evidence that Plaintiff *continues* to offer the sale of the enumerated metal parts.") (emphasis added). Similarly, Kapoor's supporting declaration did not refute that Circuitronix had done business with the metal parts identified by Kukreja, but simply indicated that Kapoor himself had not been engaged in any business activity related to them following his termination. *See* ECF No. [47-2] at ¶ 6. The parties' ensuing Joint Stipulation represented the same. *See* ECF No. [48] at ¶ 1 n.1 (providing that Kapoor's work with Chand Bawa of BMT related exclusively to "after sales replacement mechanical metal parts" that "[did] not include the following categories: stamped sheet metal parts; CNC sheet metal parts; die casting (aluminum, magnesium, iron and steel); extrusions; heatsinks; tool and die manufacturing for plastic injection molded parts, printed circuit boards, die-casted parts, stamped parts, and extrusions; and cabinet locks").

Notwithstanding the above, Kapoor now takes the more narrow position that Circuitronix's line of business during the relevant time period did *not* include the metal parts

previously identified by Kukreja. *See* ECF No. [60] at 7-8. This new and seemingly contradictory position, however, is not supported by record evidence. For example, at the evidentiary hearing, Kukreja testified in significant detail as to the scope of Circuitronix's line of business as such scope is outlined in the letters Circuitronix sent to Chand Bawa and Rohit Bawa, *see* ECF Nos. [50-1]-[50-2], and as to Kapoor's specific involvement during his employment with Circuitronix in each of the business categories listed thereunder. With respect to metal parts, Kukreja testified as to how much revenue Circuitronix grossed in that area of business during the relevant time period and that in 2012, Kapoor, while serving as Assistant CEO of the company, was charged with the specific mandate to expand that area of business. Other record evidence also suggests Circuitronix's involvement with metal parts – namely, various Circuitronix email correspondence involving Kapoor that concerns, among other things, "sheet-metal suppliers," "extrusion tolling," "CNC process," and request for quotes related to "Antenna Bracket (Metal Parts)." *See* ECF No. [45-1] at Exhs. 1-3. In an email dated September 28, 2011, Kapoor asked Kukreja if an attached "metals presentation [would] work?" ECF No. [45-1] at Exh. 4. Tellingly, the attached presentation – titled "Circuitronix - Metalworks" – lists as one of Circuitronix's objectives "[to] provide high quality precision metal stampings, die castings, sheet metal, extrusions & heatsinks." *Id.* Overall, the Court finds this evidence consistent with the assertion previously made by Kukreja that Circuitronix engaged in business relating to the following metal parts: stamped sheet metal parts; CNC sheet metal parts; die casting (aluminum, magnesium, iron, and steel); extrusions; heatsinks; tool and die manufacturing for plastic injection molded parts, printed circuit boards, die-cased parts, stamped parts, and extrusions; and cabinet locks. *See* ECF No. [45-1] at ¶ 3.

Ultimately, the Court is asked to resolve a dispute stemming from an undefined and ambiguous term that is nevertheless essential to an admittedly "imperfect" agreement. *See generally de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 (Fla. 1st DCA 2007) ("[A] meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract, and where it appears that the parties are continuing to negotiate as to essential terms of an agreement, there can be no meeting of the minds."). At the center of this dispute are Kukreja, the CEO of Circuitronix, and Kapoor, a former Assistant CEO of Circuitronix, whose respective positions put them in the best position to ascertain how Circuitronix's "line of business" was intended to be interpreted pursuant to the Settlement Agreement. Having concluded that the record contains sufficient evidence pertaining to a mutual understanding of that term by the parties at the time they entered into the Settlement Agreement, the Court finds that, for purposes of Plaintiff's Cross-Motion, Circuitronix's line of business during Kapoor's employment consists of the manufacturing and distribution of: (1) printed circuit boards, including rigid, rigid-flex, flex and/or metal clad; (2) plastic injection molded parts, including single shot, multi shot, gas assist molding, foam molding, vertical molding, overmolding, and insert molding; (3) compression and injection rubber parts, including silicone rubber keypads, gaskets, grommets, and elastomer strips; (4) metal parts, including stamped sheet metal parts, CNC sheet metal parts, die casting, extrusions, heatsinks, tool and die manufacturing for plastic injection molded parts, printed circuit boards, die casted parts, stamped parts, and cabinet locks;[7] (5) printed circuit board assembly, including through hole, SMT, BGA,

---

[7] At the evidentiary hearing, the Court accepted into evidence Circuitronix's proffer of several exhibits relating to the Imaginasian website – which Kapoor did not object to – as Circuitronix's good faith basis for alleging a breach of the Settlement Agreement. *See* Circuitronix Exhibit List at Tabs 15-26. For example, although Kapoor has testified that he has not engaged in any business related to the areas of Circuitronix's business as identified by Kukreja, the Imaginasian website advertises that it is a "'one stop-

COB; and (6) polymer thick film technology for different laminate substrates, including CEM-1, FR4, CEM-3, FR2 and ceramic.

## 2. Requested Relief

As for relief, Circuitronix requests leave for discovery related to Kapoor's purported breach of the Settlement Agreement, "damages and injunctive relief" following a final evidentiary hearing after the completion of discovery, and an award of attorneys' fees and costs as the prevailing party pursuant to the terms of the Settlement Agreement. ECF No. [55] at 20. In his Response, Kapoor argues that Plaintiff's Cross-Motion violates Local Rule 7.1(a)(3) because Circuitronix failed to comply with the conferral requirements thereunder before filing.[8] ECF No. [60] at 3-6. In its Reply, Circuitronix asserts that Local Rule 7.1(a)(3) does not apply because its motion "is a motion for injunctive relief." ECF No. [61] at 5; *see* S.D. Fla. L.R. 7.1(a)(3) (excluding from its requirements motions for injunctive relief). In the Joint Status Report filed by the parties on November 14, 2016, Kapoor construes this assertion such that Circuitronix "is only seeking injunctive relief through its Motion and not seeking money damages[,]" and

---

shop' when it comes to designing and manufacturing metal parts and components," as well as its services related to, among other things, "CNC machining," "molding[]," and "casting." *Id.* at Tabs 17-20.
[8] Local Rule 7.1(a)(3) provides, in part, that:

> Prior to filing any motion in a civil case, [with certain limited exceptions], counsel for the movant shall confer (orally or in writing), or make reasonable effort to confer (orally or in writing), with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion. . . . At the end of the motion, and above the signature block, counsel for the moving party shall certify either: (A) that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so; or (B) that counsel for the movant has made reasonable efforts to confer with all parties or nonparties who may be affected by the relief sought in the motion, which efforts shall be identified with specificity in the statement . . ., but has been unable to do so. . . . Failure to comply with the requirements of this Local Rule may be cause for the Court to grant or deny the motion . . . .

S.D. Fla. L.R. 7.1(a)(3) (2015).

therefore withdraws its contention that Local Rule 7.1(a)(3) applies.  ECF No. [63] at 4. However, as mentioned above, Circuitronix seeks more than injunctive relief – namely, damages and attorneys' fees and costs – which Circuitronix reaffirmed at the evidentiary hearing. Accordingly, Local Rule 7.1(a)(3) does apply.  Evidently, then, the parties are not on the same page once again.

Circuitronix nevertheless argues that Local Rule 7.1(a)(3)'s conferral requirements were satisfied.  ECF No. [61] at 5-6.  Specifically, Circuitronix refers to "substantive telephone conferences" between the parties' counsel prior to the filing of the competing motions, during which Kapoor's purported breach of the Settlement Agreement was discussed.  *Id.* at 5.  That much is corroborated in an email dated September 1, 2016, wherein counsel for Kapoor stated to counsel for Circuitronix: "Additionally, during our last discussion you mentioned possible breaches by Mr. Kapoor."  ECF No. [60-1] at Composite Exh. 1.  Other than that, however, there is no indication as to what specific steps counsel for Circuitronix took in an effort to confer with counsel for Kapoor regarding a potential motion and the issues it intended to raise therein. Importantly, Circuitronix does not dispute Kapoor's assertion that "at no time . . . did Plaintiff's attorneys request that the parties conduct a meet and confer regarding a proposed motion or cross motion that Plaintiff planned to file alleging breaches by Mr. Kapoor."  ECF No. [60] at 5.  As for the remainder of the relevant email correspondence submitted into the record, the Court notes that, as Circuitronix points out, the possibility of a "negotiated settlement" was communicated by counsel for Circuitronix in an email dated September 2, 2016.  *See* ECF No. [60-1] at Composite Exh. 1.  However, that email and its reference to the possibility of a settlement appear to have been related solely to the two letters Circuitronix sent to Chand Bawa and Rohit Bawa and other possible letters, which counsel for Kapoor was seeking the disclosure of and which formed the

14

basis for the motion Kapoor expressed an intention to file. *See id.* ("[W]e are open to disclosures of written communications in the context of a negotiated settlement, but absent some commitment to proceed on that course, these [disclosure] demands just seem like an effort to get a head start on discovery in *the litigation your client has threatened.*") (emphasis added). Ultimately, the Court finds dispositive that nowhere in the correspondence provided to the Court is there any mention of a possible motion for settlement enforcement by Circuitronix; that "the issue of Kapoor's material breach was discussed" during communications between the parties' counsel is not enough. ECF No. [61] at 5. Accordingly, Plaintiff's Cross-Motion, having failed to meaningfully comply with the conferral requirements under Local Rule 7.1(a)(3), will only be considered insofar as it seeks injunctive relief.

### III. Conclusion

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [50],** is **GRANTED IN PART**. Defendant will be allowed limited discovery for the sole purpose of determining whether other third party communications sent by Plaintiff violated the confidentiality and non-disparagement clauses of the Settlement Agreement.

2. Plaintiff's Cross-Motion, **ECF No. [56]**, is **GRANTED IN PART**. Plaintiff will be allowed limited discovery for the sole purpose of determining whether Defendant has materially breached the Settlement Agreement by competing in Plaintiff's line of business (as that term has now been defined) or by otherwise violating the restrictive covenants found under paragraphs 4 or 5 of the Settlement Agreement. Such discovery is limited to: (a) the depositions of Sunny Kapoor, Chand Bawa, Rohit Bawa, and Payal Bawa; and (b) any and all documents pertaining to work performed

15

by Imaginasian, BMT, and Koala, and the extent of Sunny Kapoor's relationship to such work.

3. The parties shall have **45 DAYS** from the date of this Order to conduct the limited discovery as described above. An evidentiary hearing on the motions is scheduled for **9:00 a.m.** on **Friday, February 24, 2017**.

**DONE and ORDERED** in Miami, Florida, this 16th day of December, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record